Gaston, Judge.
 

 By the act of 1729, entitled “ an act to confirm Bath town common,” it is recited “ that a tract of land, the boundaries of which are particularly described “ adjacent to Bath town, was granted and surveyed for a common for the use of the said town, but the title thereof hath never been fully confirmed,” and it is thereby enacted “that the said land shall be, and hereby is appointed a common, to lie perpetually for the use and benefit of the inhabitants of Bath town, under such restrictions and regulations as are or shall be appointed for town commons; and that the inspection and immediate care of looking after the said common be in the commissioners of the said town for the time being.” Upon this act an enquiry arises, is a grant thereby made to the inhabitants of Bath town of the tract of land itself to be held for a town common, or only of a right of common in the tract? th.at is to say, a right to feed their beasts or cut their wood thereon, or to have some other like profit therefrom. We adopt the first construction as most cousonant with the words of the act, and best fitted to effect the object of the law-makers.
 

 The recital is, that
 
 the tract of land
 
 had been granted and surveyed for a common for the use of the town of Bath, but that the title thereof hath not
 
 been fully conñrmed.
 
 The subject matter of legislation is, then, this tract of land so previously granted and surveyed. The mischief requiring legislative interference is, that notwithstanding these acts, the title, for what reason we know not, needs confirmation.. — . The obvious remedy would be to confirm the title, by giving to it all the efficacy of a legislative grant. And such accordingly seems to be the enactment “that the
 
 said land
 
 shall be and hereby is appointed a common, to lie perpetually for the use and benefit of the inhabitants of Bath town, &c.” There is not an expression in the act, from which it ¡can be fairly inferred that the Legislature had in view that incorporeal right existing in idea and abstracted contempla
 
 *197
 
 tion, which is called “the right of common,” by virtue of one man or set of men is entitled to have a profit in land of another. The term “a common,” which is used in the act, is not appropriate to the expression of this incorporal right, but is descriptive of the
 
 land
 
 itself, as devoted to public, instead of being appropriated to private, uses. By a town common, in common parlance, is understood an enclosed or unenclosed place belonging to the town,and in which no individual has a private property. If the puroose of the act had been to confer on the inhabitants of Ba.th this supposed incorporeal right, the nature and extent of the right would have been declared. Rights of common are of various sorts, as the right of feeding one’s beasts on another’s lands, of fishing in another man’s water, of cutting necessary wood from off another’s estate, or digging turf upon another’s ground. Which of these is the right of common by this act intended to be
 
 fully
 
 confirmed? It would have been natural too, had such been the purpose of the act, to let it be known whose was the land that was to be subjected to these servitudes — who had accepted the grant made for these uses. Yet is the act entirely silent in this respect, and if this be its construction, we shall be obliged to hold, that the Lords Proprietors retained the dominion to themselves, subject to the exercise of this undefined right in the inhabitants of Bath. Now if this be so, what is the meaning of that part of the act which makes it the duty of the commissioners of the town of Bath to take care ot this common? The property of it is in the Lords Proprietors — and the sole interest therein of those whom they represent, is one “ existing in idea and abstracted contemplation.” But if we follow the natural and obvious interpretation of the act, and hold it to be a legislative grant of the land itself to the inhabitants of Bath as a town common, there is a manifest congruity in commending the immediate carp of this property to the commissioners of the said town. The case does not set forth any legislative act or charter previous to the act of 1729, by which the inhabitants of Bath town had been erected into a corporation, and made capable of receiving a conveyance of lands, and therefore whatever personal information we have on the subject,
 
 *198
 
 we cannot judicially know that such was the fact.
 
 Bat
 
 this is immaterial; for certainly, if the statute of 1729 contains a legislative grant to the inhabitants of Bath, it
 
 ipso facto
 
 creates them a body politic for the purposes of that grant.. — . ■The statute confers a capacity to take (if it did not exist before) whatever it declares to be the will of the Legislature to confer.
 

 We think that the conclusion to which we are brought, by an examination of the language and of the object of the act of 1729, is corroborated by the legislative exposition of that act, in the subsequent statute of 1745. This is entitled “ an act for fencing the town of Bath, and re-surveying the •common
 
 belonging to the said
 
 town, «fee, &c.”; and, among ■other things, it enacts ££ that the common
 
 belonging to the said town
 
 shall be surveyed at the expense of the inhabitants of said town; and that proper landmarks shall be set on the bounds of the same, so that persons may know where the same are, and not commit trespass on the lands adjoining.” Here is an explicit recognition by the Legislature — a recognition approaching, too, quite near in point of time to the legislative grant — that the tract of land called Bath Common was the property of the inhabitanls of Bath town.
 

 The act of 1834, ££ for the better regulation of the town of Bath, in Beaufort county,” is an amended legislative charter, whereby the corporation of the inhabitants of Bath town, has its corporate existence continued with sundry modifications, under the corporate name of
 
 “
 
 the commissioners of
 
 the
 
 town of Bath,” by which name it was thereafter to sue and be sued, and to have perpetual succession. We are led to this interpretation of the act, not so much by any one specific enactment, as by an examination of the whole of its numerous and detailed provisions, shewing that these were intended as a complete substitute for the few and imperfect provisions of former acts — and we are confirmed in the conviction of its correctness, by the absurdities which would result from intending two corporate bodies in relation to the same subjéct matter, the town of Bath — one, £< the inhabitants of Bath town” — the other, ££ the commissioners of the town of Bath.”
 

 The case does not state affirmatively that the amended
 
 *199
 
 charter has been accepted or acted upon by the inhabitants of Bath. But, in setting forth the objections made to the recovery of the plaintiff, it raises no question in relation to this fact. We must intend, therefore, that it was not disputed at the trial.
 

 It is, therefore, the opinion of this Court, that the tract of land in question was granted to the inhabitants of Bath town by the legislative authority of North Carolina, and by virtue of that grant became the property of the said inhabitants; and that the same is still the property of the said inhabitants, under their corporate name of the commissioners of the town of Bath.
 

 According to this opinion, the non-suit must be set aside, and a judgment rendered for the plaintiff pursuant to the verdict of the jury.
 

 Per Curiam. Judgment reversed.